IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IRIS DELIA DONES-PABÓN<br><br>Plaintiff,<br><br>v.<br><br>HOSPITAL AUXILIO MUTUO DE PUERTO RICO, INC., et al<br><br>Defendants. | CIVIL NO. 20-1628 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

The present case arises out of a failed surgery to Plaintiff Iris Delia Dones-Pabón's ("Plaintiff") right hand. On November 11, 2020, Plaintiff timely filed suit alleging that Defendants Dr. Ian C. Marrero-Arocho ("Co-defendant Dr. Marrero") and Hospital Auxilio Mutuo de Puerto Rico, Inc. ("Co-defendant Auxilio Mutuo" collectively "Defendants") incurred in medical malpractice and claimed damages for their negligent acts performed during said surgery. (Docket No. 1). On February 8, 2021, Plaintiff filed a First Amended Complaint. (Docket No. 4, Exhibit 1).[1]

Co-defendant Dr. Marrero and Co-defendant Auxilio Mutuo filed separate Answers to the First Amended Complaint on April 28, 2021, and May 5, 2021, respectively. (Docket Nos. 11 and 12). On March 9, 2023, Defendants filed a Joint Motion for Summary Judgment ("Motion for Summary Judgment"), pursuant to Federal Rule of Civil Procedure 56 ("Federal Rule 56"), in which they aver that diversity is lacking and that Plaintiff has failed to prove that her claim is worth more that the jurisdictional

---

[1] The First Amended Complaint constitutes the official complaint of this case and will be treated as such pursuant to Federal Rule of Civil Procedure 15(a)(2).

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 2 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 2
_____

threshold amount. (Docket No. 19). On April 12, 2023, Plaintiff opposed Defendants' Motion for Summary Judgment. (Docket No. 27). On May 1, 2023, Defendants filed a Reply to Plaintiff's Opposition. (Docket Nos. 33 and 34).

For the reasons explained below, Defendants' Motion for Summary Judgment is GRANTED.

**FACTUAL BACKGROUND**

**A. Factual Background.**

On November 14, 2019, following an accident at the Triple-A Gun Range, Plaintiff arrived at Co-defendant Auxilio Mutuo's Emergency Room for medical assistance regarding her right hand. (Docket No. 4, Attachment 1 at p. 2 and Docket No. 19, Exhibit 15 at p. 2). Once there, Plaintiff was examined by the medical staff and diagnosed with having a foreign body —a metal bullet fragment— lodged in her right hand. (Docket No. 4, Attachment 1 at p. 2). After taking X-rays of her right hand, Plaintiff was referred to Co-defendant Dr. Marrero, an orthopedic hand surgeon working with Co-defendant Auxilio Mutuo at the time, to schedule an appointment for evaluation. Id. at p. 3. Upon evaluating Plaintiff's file, Co-defendant Dr. Marrero scheduled ambulatory surgery for February 3, 2020, to remove the bullet fragment from her right hand. (Docket No. 11 at p. 3 and Docket No. 27, Exhibit 4 at p. 3).

Co-defendant Dr. Marrero did not order new X-rays of Plaintiff's right hand on the day of the surgery, but rather limited himself to studying the X-rays taken at the hospital approximately three (3) months prior to pinpoint the bullet fragment's location. (Docket No. 4, Attachment 1 at p. 3). Plaintiff was given a local anesthetic to numb her right hand, but she remained awake and conscious during the surgery. Id. Co-defendant Dr. Marrero

proceeded to open the backside of Plaintiff's hand and "carve into the flesh and bones" using various "surgical instruments to look around for the metal [bullet] fragment." Id. After several minutes, Co-defendant Dr. Marrero was unable to locate the bullet fragment and informed Plaintiff that the surgery was a failure. Id. Plaintiff avers that, upon her inquiry as to why Co-defendant Dr. Marrero did not perform additional X-rays of her hand prior to surgery, he allegedly stated that "it must have been ordered but he did not do it." Id.

Plaintiff claims that, in the months following the surgery, she experienced "pain, discomfort, chills, panic, and severe pain in the intervened area." Id. After various follow-up visits, a second surgery was scheduled and performed by Co-defendant Dr. Marrero on June 19, 2020, approximately four (4) months after Plaintiff's first failed surgery. (Docket No. 4, Attachment 1 at p. 4). Co-defendant Dr. Marrero requested this time new X-rays be taken of Plaintiff's right hand prior to surgery and subsequently removed the bullet fragment from Plaintiff's forearm, where it had seemingly migrated. Id; (Docket No. 4, Exhibit 1 at p. 7).

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule 56, "[a] party may move for summary judgment, identifying each claim or defense - or that part of each claim or defense - on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment should only be considered by the Court when the moving party proves two things: (1) that "there is no genuine issue of material fact" and (2) that it is "entitled to judgment as a matter of law." Tolan v. Cotton, 572 U.S. 650, 656-57, 134 S.Ct. 1861, 1866 (2014); Fed. R. Civ. P. 56.

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 4
_____

Although the Court must view the record in the light most favorable to the nonmoving party and "draw[] all reasonable inferences in [their] favor", Taite v. Bridgewater State Univ., Bd. of Tr., 999 F.3d 86, 92 (1st Cir. 2021) (citing Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013)), the nonmoving party must still prove material issues of fact exist that defeat summary judgment. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52-53 (1st Cir. 2000) ("[T]he nonmoving party 'may not rest upon the mere allegations or denials of [the] pleadings but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial." (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986)).[2]

The Court must then "determine whether a trial-worthy issue exists" by "look[ing] to all of the record materials on file, including the pleadings, depositions, and affidavits." Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014) (citing Fed. R. Civ. P. 56(c)(1)(A); Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013)). See also López-Hernández, 64 F.4th at 28 ("At summary judgment, 'the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" (citing Anderson, 477 U.S. at 249); Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018) ("'The role of summary judgment is to pierce the pleadings' and probe the proof to ascertain whether a need for trial exists." (citing Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002)). Accordingly, summary judgment will not proceed if the Court deems the evidence "sufficiently open-

---

[2] See also Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) ("'[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less significantly probative' will not suffice to ward off a properly supported summary judgment motion." (citing Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)).

ended [sic] to permit a rational fact finder to resolve the issue in favor of either side." Ahmed, 752 F.3d at 495 (citing Gerald, 707 F.3d at 16).

Furthermore, "in a diversity action where there is no question of ripeness, mootness, or standing, the existence *vel non* of subject matter jurisdiction typically turns on two facts—diversity of citizenship and amount in controversy." Hernández-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005) (citing Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001); 28 U.S.C.A. § 1332). In such instances, the courts may "rely on documentary evidence to establish whether jurisdiction attaches." Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 33 (1st Cir. 2008) (citing Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 500, 104 S.Ct. 1949, 1959 (1984)). See also Hernández-Santiago, 397 F.3d at 33 ("Where a party challenges the accuracy of the pleaded jurisdictional facts, the court may conduct a broad inquiry, taking evidence and making findings of fact." (citing Valentín, 254 F.3d at 363)).

**UNCONTESTED FACTS**

Pursuant to the filings on the record, the Court finds the following facts to be uncontested.[3]

1. Plaintiff Iris Delia Dones-Pabón lives and spends time in Kissimmee and in Puerto Rico.[4] (Defense Exhibit 1a at l. 2-4; Docket No. 27, Exhibit 1, at p. 3, ¶ 1).

---

[3] These facts are taken from Defendants' Motion for Summary Judgment, and they stand uncontested as Plaintiff admitted them in her Opposition, with certain clarifications as to facts 1, 7, and 13. (Docket No. 19, Attachment 1 at pp. 1-5 and Docket No. 27, Exhibit 1, at p. 2-6). The Court only considered those facts and subsequent clarifications that were pertinent to the issue of diversity jurisdiction, which the Court finds dispositive of this case. Additionally, the Court did not consider Plaintiff's Sworn Statement submitted in support of her statement of additional facts, for the reasons discussed in more detail below.

[4] Plaintiff clarified that she moved from Kissimmee to Orlando, Florida, after her deposition was taken. That fact, however, is not relevant to the determination of the domicile at the time the Complaint was filed.

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 6 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 6
_____

2. In Puerto Rico, Ms. Dones-Pabón lives in Toa Alta with her husband, José Dominicci, to whom she had been married since December 31, 2015. (Defense Exhibit 1a at l. 5-17).

3. Ms. Dones-Pabón is married to Mr. José Dominicci without a prenuptial agreement, that is, under the joint legal partnership. (Defense Exhibit 2 at l. 5-13).

4. The house address in which Ms. Dones-Pabón lives in Toa Alta, Puerto Rico, is California Street #43, Urbanización Casablanca Toa Alta, P.R. 00953. (Defense Exhibit 1a at l. 18-23).

5. The Toa Alta residence is registered under the name of Ms. Dones-Pabón's husband. (Defense Exhibit 1a at l. 24; Defense Exhibit 1b at l. 1).

6. Ms. Dones-Pabón has lived in the Toa Alta residence since December 2014. (Defense Exhibit 1b at l. 5-8).

7. In Kissimmee, Ms. Dones-Pabón lived with her son in a rented property which neither she, nor her son owns. (Defense Exhibit 1b at l. 18-23).

8. Ms. Dones-Pabón's health insurance plan is provided exclusively by the Auxilio Mutuo Hospital, which she has had for a long time before the accident that occurred on November 14, 2019. (Docket No. 1 at p. 2; Docket No. 4 at p. 2; Defense Exhibit 3 at l. 23-24; Defense Exhibit 4 at l. 1-19).

9. All medical appointments and medical care that Ms. Dones-Pabón receives are received in Puerto Rico through the Auxilio Mutuo Associates' medical plan. (Defense Exhibit 4 at l. 20-24).

10. Ms. Dones-Pabón does not receive any medical care or treatment in Kissimmee

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 7 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 7
_____

or in the United States. (Defense Exhibit 5 at l. 1-4).

11. Ms. Dones-Pabón has several motor vehicles registered under her name in Puerto Rico. (Defense Exhibit 5 at l. 5-17).

12. Ms. Dones-Pabón has no motor vehicle registered under her name in Kissimmee. (Defense Exhibit 5 at l. 23-24; Defense Exhibit 6 at l. 1-2).

13. Ms. Dones-Pabón has a Puerto Rico driver's license and a Florida driver's license. (Defense Exhibit 6 at l. 3-5; Docket No. 31, Exhibit 2 at p. 64, l. 9-12).

14. Ms. Dones-Pabón has two bank accounts in Puerto Rico, one with Oriental Bank and one with Banco Popular. (Defense Exhibit 6 at l. 6-16; Defense Exhibit 7).

15. The address registered at Banco Popular for Ms. Dones-Pabón is Urb. Jard de Casablanca 43 California Roa [sic] Alta, PR 00953-3686. (Defense Exhibit 7).

16. Ms. Dones-Pabón has no bank account under her name in Kissimmee. She has a business account in a Florida bank under her company's name. (Defense Exhibit 6 at l. 17-20; Docket No. 31, Exhibit 1 at p. 18, l. 17-20).

17. Ms. Dones-Pabón manages her expenses in Kissimmee in cash. (Defense Exhibit 6 at l. 21-24).

18. Ms. Dones-Pabón's domestic corporation, Skull Stable, is an LLC which she has with her husband, that is registered in Puerto Rico and operates at the Camarero Racetrack at Canóvanas, Puerto Rico. (Defense Exhibit 8 at l. 1-12; Defense Exhibit 9).

19. In the Corporation Registry at the Department of State of the Commonwealth of Puerto Rico, "Iris Dones-Pabón" is identified as the "Resident Agent" and

"Authorized Person" for Skull stable LLC and her registered physical address is identified as: "Carr. #3, Km 15.3 65th Infantería Canóvanas P.R. 00729" and her mailing address is identified as: "Jardines de Casablanca #43 Calle California Toa Alta, PR 00953." (Defense Exhibit 9).

20. Dr. Ian C. Marrero-Amadeo is domiciled in Puerto Rico. (Defense Exhibit 10).

21. Hospital Español Auxilio Mutuo de Puerto Rico, Inc. is a domestic non-profit corporation domiciled and duly registered in the Commonwealth of Puerto Rico, Inc., at the Registry of Corporation and Entities of the Department of State of the Commonwealth of Puerto Rico. (Defense Exhibit 11).

## LEGAL ANALYSIS

### A. Sham Affidavit.

The Court first addresses a procedural matter since it materially alters Plaintiff's Opposition to the Motion for Summary Judgment. In support of Plaintiff's opposition, she includes a sworn statement in her Statement of Additional Facts ("Statement of Additional Facts") (Docket No. 27, Attachment 1 at pp. 6-11 and Exhibit 1). Plaintiff claims that both the sworn statement and the Statement of Additional Facts are not meant to create issues of material fact, but rather "to clarify certain facts." (Docket No. 27, Attachment 1 at p. 2).

Defendants contend in their Reply that the sworn statement Plaintiff uses to support her Statement of Additional Facts constitutes a "sham affidavit" inasmuch as it brings forth certain facts and arguments that directly contradict Plaintiff's prior deposition testimony, purposely creating genuine issues of fact to defeat the summary judgment. (Docket No. 33 at p. 2 and Docket No. 34 at pp. 1-2). Thus, Defendants request

that the Court strike the sworn statement from the record in its entirety and disregard the Statement of Additional Facts.

Federal Rule 56 allows parties to present affidavits or declarations in support of or in opposition to summary judgment, so long as they are based "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court has previously explained that, at this stage of the proceedings, evidence of this nature is approached "with 'a scalpel, not a butcher's knife,' disregarding the inadmissible portions and crediting the remaining statements." Calderón-Amézquita v. Rivera-Cruz, 483 F.Supp.3d 89, 107 (D.P.R. 2020) (citing Pérez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001)).

Nonetheless, the Court of Appeals for the First Circuit has continuously upheld the decades-old precedent that "'[w]hen an interested witness has given clear answers to unambiguous questions at deposition, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory but does not give a satisfactory explanation of why the testimony is changed.'" Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 50 (1st Cir. 2019) (citing Pena v. Honeywell Int'l., 923 F.3d 18, 30 (1st Cir. 2019)); see also Escribano-Reyes v. Professional Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) (citing Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000)); Rockwood v. SKF USA Inc., 687 F.3d 1, 12 (1st Cir. 2012) (citing Abreu-Guzmán v. Ford, 241 F.3d 69, 74 (1st Cir. 2001)); Colantuoni v. Alfred Calgani & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2726, at 30-31 (2d ed. Supp. 1994)).

This does not automatically "bar a party from 'elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition.'" Morán-Ubieta v. Baxter Health Care de Puerto Rico, Inc., Civ. No. 17-12593 (MDM), 2021 WL 4438086, at *2 (D.P.R. Sept. 27, 2021) (citing Malavé-Torres, 616 F.Supp.2d at 203; Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 26 (1st Cir. 2002)); see also Pérez-Maspons v. Stewart Title Puerto Rico, Inc., 208 F.Supp.3d 401, 408 (D.P.R. 2016) (stating that the Court is not automatically precluded from considering an affidavit at the summary judgment stage merely because it is self-serving in nature.). For example, when a "subsequent affidavit [] merely explains, or amplifies upon, opaque testimony given in a previous deposition", the Court may consider it when deciding a motion for summary judgment. Gillen, 283 F.3d at 26 (citing Shepherd v. Slater Steels Corp., 168 F.3d 998, 1007 (7th Cir. 1999); Herring v. Can. Life Assur. Co., 207 F.3d 1026, 1030-31 (8th Cir. 2000)).

However, it is a different scenario when the party presenting the contradictory affidavit does so after summary judgment has been requested and without any explanation as to the reason behind the disparity. Pena, 923 F.3d at 30. Factors such as timing and the party's explanation for the discrepancies between the affidavit and the previous deposition may be considered when deciding whether the affidavit constitutes "an attempt to manufacture an issue of fact so as to defeat summary judgment." Malavé-Torres v. Cusido, 919 F. Supp. 2d 198, 203 (D.P.R. 2012) (citing Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 477 F.3d 105, 110 (1st Cir. 2006)). Thus, the Court may strike a subsequent affidavit or sworn statement from the record if it determines that it constitutes a "sham affidavit." See Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 21 (1st Cir. 2000) (affirming the district court's decision to strike Plaintiffs' affidavits

because they provided no explanation as to why their subsequent affidavits contradicted their previous sworn testimony.). Moreover, the Court is not obligated to "specifically enumerate the contradictions that lead it to disregard a given piece of evidence." Orta-Castro, 447 Fd.3d at 110.

Upon close examination of the documents at issue, it is clear that Plaintiff's sworn statement, from which she bases most of her proffered additional facts, is indeed a "sham affidavit."

First, the sworn statement was prepared only two (2) days prior to the filing of Plaintiff's Opposition to the Motion for Summary Judgment. (Docket No. 27, Exhibit 1). This timing is clearly suspicious and militates in favor of striking the same.

Second, Plaintiff's lack of explanation as to why the sworn statement was tendered at such a late juncture likewise raises a red flag.[5] Plaintiff chose to wait a month after summary judgment was filed to present several new facts in support of her Opposition that directly conflict with her prior testimony, without any explanation for the disparity or evidence to support them. For example, Plaintiff now alleges that she "has been domiciled in Florida since at least 2013." (Docket No. 27, Attachment 1 at p.7). Plaintiff, however, was clear in her deposition that she has lived in Puerto Rico all her life until 2018, when she started traveling back and forth between Kissimmee, Florida, and Puerto Rico. (Docket No. 19, Exhibit 3). No mention of domicile was made when the deposition was taken, but rather, it is the sworn statement that mentions the word "domicile" for the

---

[5] Plaintiff limits herself to stating that, as the nonmoving party, all reasonable inferences must be drawn in her favor and that, unlike Defendants in the case, she is not bound by the uncontested facts. (Docket No. 27, Attachment 1 at p. 6). Plaintiff is mistaken. Once summary judgment is raised by a defendant, Plaintiff has a duty to prove that *genuine* issues of material fact exist to defeat summary judgment. Santiago-Ramos, 217 F.3d at 52-53 (emphasis added).

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 12 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 12
_____

first time.

Third, many of Plaintiff's other "good faith clarifications" can easily be found in Plaintiff's deposition, making them a mere rehashing of the record and which add nothing to the diversity issue pending before the Court. For instance, Plaintiff's "clarification" of the fact that her current residence is currently at "14600 Gateway Point Cir., Apartment 13106, Orlando, Florida, before that, she lived at 3223 Morning Light Way, Kissimmee, Florida 34744-9419. Before that, she resided at 255 Curtis Avenue, Groveland, Florida 34736", is irrelevant to the determination of whether she was domiciled in Florida *at the time the Complaint was filed*.[6] The same goes for her statement that she "distributes her time between Florida and Puerto Rico. She does not own real property. Neither in Florida nor Puerto Rico". (See Docket No. 27, Attachment 1 at p. 7, ¶ 4; p. 8, ¶ 5). This was previously discussed in her deposition testimony and does not really contribute any further useful information to the determination of Plaintiff's domicile.

Fourth, the sworn statement suffers from internal contradictions as well, which make it unreliable and raise even more questions. For example, in paragraph 9, Plaintiff states that her husband owns the property in Toa Baja, P.R., "where we live in when working in Puerto Rico." (Docket No. 27, Attachment 1, at p. 2 ¶ 9). In paragraph 12, however, she states that she works in Miami and Tampa and "does not work remotely." Id at ¶12. This clear contradiction as to where Plaintiff works undermines her position and gives little weight to her affidavit.

---

[6] See García-Pérez v. Santaella, 364 F3d 348, 350-51 (1st Cir. 2004) ("The key point of inquiry is whether diversity of citizenship existed at the time the suit is filed; subsequent events may bear on the sincerity of a professed intent to remain but are not part of the primary calculus."); Miranda v. Miranda, 686 F.Supp. 44, 47 (D.P.R. 1988)).

What the statement *does* offer to Plaintiff is a second bite at the apple after her deposition, when she conveniently adds that she considers Florida her home and her domicile. This statement is wholly self-serving, and further tilts the balance in favor of striking the statement as a "sham affidavit." Simply put, the rehashing of the facts in the tardily filed affidavit serves no real purpose but is rather a blunt attempt to add the one sentence that will help Plaintiff overcome summary judgment. In addition, this Court has previously held that "'[s]tatements of intent are accorded minimal weight [when] measured against [other] objective factors.'" Padilla Mangual v. Pavia Hosp., 640 F.Supp.2d 128, 137 (D.P.R. 2009) (citing Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 246 (D.P.R. 1993)). Thus, Plaintiff's steadfast conviction, without more, is not enough to pass muster.

The Court cannot blindly consider these "eleventh hour recollections" under the guise of clarifying the record, when their timing is so opportune. Hernández-Loring, 233 F.3d at 52 (citation omitted). Moreover, Plaintiff has failed to explain why there is a disparity between her deposition testimony and the sworn statement. "If prior statements under oath could be disavowed at will after a motion is made, the other side would be faced with a constantly moving target and summary dispositions made almost impossible." Id., at 54. Thus, the sworn statement clearly falls within the scope of the "sham affidavit" doctrine.

Consequently, the Court strikes Plaintiff's sworn statement from the record and will disregard her Statement of Additional Facts.

### B. Diversity Jurisdiction.

The Court has stricken Plaintiff's sworn statement and, as such, its content is disregarded. The facts the Court must consider to resolve the Motion for Summary Judgement are therefore those which are uncontested based on Defendants' Statement of Uncontested Facts, as admitted and clarified by Plaintiff and summarized above. Defendants' Motion for Summary Judgment raises two issues, to wit, lack of diversity jurisdiction and failure to meet the jurisdictional threshold amount. The Court entertains the diversity issue, as it finds it dispositive of this case.

Defendants claim that diversity jurisdiction is lacking because Plaintiff is domiciled in Puerto Rico, not in Florida. Plaintiff's position is that though she distributes her time between Puerto Rico and Florida, her true domicile is Florida. The parties then include an amalgam of exhibits in support of their arguments, including various pages of Plaintiff's deposition taken on May 24, 2022, and June 24, 2022, to demonstrate the ties and connections Plaintiff has to Florida and Puerto Rico.

Upon careful examination of the totality of the evidence on the record, the Court sides with Defendants and concludes that Plaintiff is domiciled in Puerto Rico.

Pursuant to 28 U.S.C.A. § 1332(a)(1), the Court has original jurisdiction over all civil cases between citizens of different states. 23 U.S.C.A. § 1332(a)(1). Domicile and citizenship are analogous for purposes of diversity jurisdiction. Valedón Martínez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986) (citing Hawes v. Club Ecuestre el Comandante, 598 F.2d 698, 701 (1st 1979); see also Padilla-Mangual, 516 F.3d at 31 ("For purposes of diversity, a person is a citizen of the state in which he is domiciled.") and cases cited therein. The First Circuit has defined domicile

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 15 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 15
_____

as "the technically preeminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined." Valedón Martínez, 806 F.2d at 1132 (citing Williamson v. Osenton, 232 U.S. 619, 625 (1914)). In other words, it is "the 'place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" Valentín, 254 F.3d at 366 (citing Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988)). It is therefore a person's domicile, not his residence, that is "the basis of subject matter jurisdiction" in diversity cases. Aponte-Dávila v. Municipality of Caguas, 828 F.3d 40, 49 (1st Cir. 2016).

Additionally, there must be complete diversity between the parties. Aponte-Dávila, 828 F.3d at 46. "[T]he presence of but one nondiverse party divests the district court of original jurisdiction over the entire action." Id. (citing In re Olympic Mills Corp., 477 F.3d 1, 6 (1st Cir. 2007)). When domicile is challenged by a defendant, the plaintiff must show, by a preponderance of the evidence, that diversity is indeed present. Aponte-Dávila, 828 F.3d at 46; Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)). A party's domicile is determined at the time the suit is filed. Meléndez-García v. Sánchez, 629 F.3d 25, 41 (1st Cir. 2010) (citing Padilla-Mangual, 516 F.3d at 31). Once established, there is a presumption of continued domicile until a new one is acquired. Id; Aponte-Dávila, 828 F.3d at 46.

The First Circuit has repeatedly used a laundry list of factors to determine a party's true domicile, to wit: "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 16 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 16
_____

licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." Meléndez-García, 629 F.3d at 41 (citing Padilla-Mangual, 516 F.3d at 32).  Where a person is registered to vote has also been a factor of significant weight considered by the courts when determining domicile.  Id; Padilla-Mangual, 516 F.3d at 32 (citing Lundquist, 946 F.2d at 12).  Residence is likewise considered, though it is not dispositive when determining a person's domicile because a party may have more than one.  Aponte-Dávila, 828 F.3d at 49 (citing García-Pérez, 364 F.3d at 351).  Both the number of ties the party has, as well as their significance must be considered when determining a party's true domicile.  García-Pérez, 364 F.3d at 351 (citing Lundquist, 946 F.2d at 12; León v. Caribbean Hosp. Corp., 848 F.Supp. 317, 318 (D.P.R. 1994)).

Though Plaintiff in the instant case alludes to living in Florida, the only ties she has to the state are minimal and superficial, to wit: (1) a Florida driver's license; (2) a rented apartment she has with her son when she stays in Kissimmee, which she does not own; (3) a business account in a Florida bank; and (4) a Florida branch of Skull Stable, LLC, which she manages.  These ties alone are not enough to tip the scales of diversity in Plaintiff's favor, especially when compared to the plethora of connections she holds in Puerto Rico.

Plaintiff also clarified that, after the deposition date she moved from the rental property in Kissimmee, Florida, with her son, to a property in Orlando, Florida.  As previously discussed, however, this fact is irrelevant since domicile is determined at the time of the filing of the Complaint.  García-Pérez, 364 F3d at 350-51.

Conversely, the uncontested facts expressly admitted by Plaintiff show that she has

Case 3:20-cv-01628-CVR   Document 35   Filed 05/11/23   Page 17 of 18

Iris Delia Pabón-Dones v. Hospital Auxilio Mutuo de Puerto Rico, Inc. et al,
Opinion and Order
Civil 20-1628 (CVR)
Page 17
_____

much stronger and abundant ties to Puerto Rico. These facts show that: (1) Plaintiff has lived in the island her whole life, until approximately 2018, when she started traveling back and forth to Florida; (2) she lives in her Toa Baja home with her husband, since 2014; (3) her husband, to whom she has been legally married since 2015, lives and works in Puerto Rico; (4) the company she owns with her husband, Skull Stable, LLC is a registered Puerto Rico corporation; (5) Plaintiff is listed at the Puerto Rico State Department as Skull Stable, LLC's Resident Agent, with a physical address in Canóvanas, P.R. and a postal address in Toa Alta, P.R.; (6) Skull Stable, is an LLC that operates at the Camarero Racetrack at Canóvanas, Puerto Rico; (7) Plaintiff has various vehicles registered under her name in Puerto Rico and no vehicles registered under her name in Florida; (8) she has a Puerto Rico driver's license; (9) she has two personal checking accounts from two different Puerto Rico banks (i.e., Banco Popular de Puerto Rico and Oriental Bank); (10) she has no financial ties in Florida as she has no real estate properties there nor a personal banking account, and she manages all her expenses in Florida in cash; (11) her health insurance, provided by Auxilio Mutuo Hospital, is a Puerto Rico health insurance; and (12) she receives all of her appointments and medical treatments in Puerto Rico.

Thus, it is evident to the Court that, although Plaintiff has some ties with Florida, she has always been and continues to be domiciled in Puerto Rico. A few trivial ties to Florida do not change this fact. The fact that her personal property (motor vehicles) is located in Puerto Rico, her personal bank accounts are in Puerto Rico, her medical insurance and appointments are all in Puerto Rico, and her husband lives and works in

Puerto Rico, where she also admitted she lives,[7] all weigh heavily against her claim that she is domiciled in Florida. The number of ties she holds in Puerto Rico, as well as their significance, clearly outweigh the ones in Florida. García-Pérez, 364 F.3d at 351. The uncontested facts thus show that Plaintiff is domiciled in Puerto Rico, and she has not been able to prove otherwise. Succinctly stated, Plaintiff has not put the Court in a position to rule in her favor. The lack of diversity between the parties divests the Court of its ability to hear this case.

Hence, the present case is DISMISSED for lack of subject matter jurisdiction.[8]

## CONCLUSION

For the foregoing reasons, Defendants' "Motion for Summary Judgment" is GRANTED. (Docket No. 19). Accordingly, Plaintiff Iris Delia Dones-Pabón's claims against Co-defendants Dr. Ian Marrero-Amadeo and Hospital Auxilio Mutuo de Puerto Rico, Inc. are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, on this 11th day of May 2023.

S/CAMILLE L. VELEZ-RIVE  
CAMILLE L. VELEZ-RIVE  
UNITED STATES DISTRICT JUDGE

---

[7] See Uncontested Fact Nos. 2, 4, and 6.
[8] Having so ruled, the Court finds it unnecessary to entertain the claims regarding the jurisdictional threshold amount.